IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

FILED
FEB - 5 2024
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES STEVENS,<br><br>Defendant. | No. 3:24-cr-010<br><br>18 U.S.C. § 1344<br>Bank Fraud<br>(Count 1)<br><br>Forfeiture Allegation |

**CRIMINAL INFORMATION**

THE UNITED STATES ATTORNEY CHARGES THAT:

**General Allegations**

At all times material to this criminal information, unless otherwise stated:

1. The defendant, JAMES STEVENS, worked at Primis Bank (f/k/a Sonabank; EVB; Southside Bank) (hereafter "Primis") from 2000 to June 2023 as a Commercial Lender, Branch Manager, and Assistant Branch Manager.

2. Primis is a Virginia state-chartered bank headquartered in McLean, Virginia. Primis' deposits are insured by the Federal Deposit Insurance Corporation ("FDIC"), and Primis is a financial institution as that term is defined at Section 20 of Title 18, United States Code. Primis currently has approximately 30 branches in operation throughout Virginia and approximately two branches in Maryland.

3. STEVENS resided in Tappahannock, Virginia and worked in Primis branches located in the Eastern District of Virginia, including the Primis branches in Central Garage, Virginia and Heathsville, Virginia.

4. As part of his responsibilities as a Commercial Lender at Primis, the defendant had authority to issue loans to borrowers on behalf of Primis. Specifically, the defendant was

1

responsible for assessing the creditworthiness of potential borrowers, drafting the documents supporting loans to borrowers, and servicing the loans he assisted in originating on behalf of Primis. The defendant also had access to customer accounts, the ability to open customer accounts, and the ability to transfer funds in and out of customer accounts at Primis.

## COUNT 1
### (Bank Fraud)

5. From in or about 2008, through in or about June 2023, in the Eastern District of Virginia and elsewhere, the defendant, JAMES STEVENS, did knowingly, and with the intent to defraud, execute and attempt to execute a scheme and artifice to defraud and to obtain money and property under the custody of Primis Bank, a financial institution (as that term is defined in Title 18, United States Code, Section 20) located within the Eastern District of Virginia, by means of materially false and fraudulent pretenses, representations, and promises.

### Purpose of the Scheme and Artifice to Defraud

The purpose of STEVENS' scheme was to fraudulently obtain funds from Primis and Primis customers for his own personal benefit and for the benefit of others who were not entitled to the funds.

### The Ways, Manner, and Means of the Scheme

The ways, manner, and means by which STEVENS sought to accomplish the purpose of his scheme and artifice to defraud included the following actions and methods.

6. The defendant's primary method of obtaining Primis funds to which he was not legitimately entitled involved his exploitation of his position as a Commercial Lender to issue numerous fraudulent loans, on behalf of Primis, in the names and utilizing the identities of numerous other individuals. The defendant thereafter utilized the proceeds of these fraudulent

loans to make payments on previously opened fraudulent loans, to pay himself, or to pay others he associated with.

7. The defendant also obtained funds by exploiting his ability to create Primis customer accounts, and his access to the personal identifying information of Primis customers, to misappropriate funds from Primis customer accounts that the defendant had gained control over. The defendant thereafter dissipated those Primis customers' funds for his own purposes.

### Execution of the Scheme and Artifice to Defraud

To execute the above-described scheme and artifice to defraud, the defendant caused to be committed the following acts, among others, in the Eastern District of Virginia.

8. Beginning in or about 2008, STEVENS originated several fraudulent loans on behalf of Primis worth a total of at least $530,000 to a Primis customer (hereafter, INDIVIDUAL 1). The loans were fraudulent because, as the defendant knew, INDIVIDUAL 1 lacked the creditworthiness necessary to receive the loans under Primis' credit standards. For some of the loans to Individual 1, the defendant used false documents and information to support the extension of these loans to INDIVIDUAL 1. The defendant was aware that INDIVIDUAL 1 had low creditworthiness, that INDIVIDUAL 1 frequently engaged in gambling, and that INDIVIDUAL 1 repeatedly lost the proceeds of loans that the defendant provided him on behalf of Primis through bad gambling bets. When the defendant originated these loans on behalf of Primis, he knew that some of the documents purporting to corroborate INDIVIDUAL 1's collateral were fraudulent and knew that other loans were essentially unsecured.

9. For several years, until in or about January 2011, STEVENS ensured that the loans he helped extend to INDIVIDUAL 1 stayed current—*i.e.*, that the Primis received the required loan payments—in part by opening new, fraudulent lines of credit for the benefit of INDIVIDUAL

1. In other words, as payments on INDIVIDUAL 1's original fraudulent loans came due, the defendant issued new fraudulent loans to INDIVIDUAL 1 on behalf of Primis, and the defendant facilitated the use of the funds from the new loans to pay off the original loans.

10. In or about January 2011, INDIVIDUAL 1 was arrested for a violent crime and charged with felony offenses in state court. INDIVIDUAL 1's pending criminal case caused him to lose work and rendered him unable to make any payments on his outstanding loans from Primis, which at that time valued approximately $300,000.

11. On or about May 20, 2011, STEVENS issued an approximately $300,000 renewal loan on behalf of Primis using documents that STEVENS knew were fraudulent, including false collateral and income documentation for INDIVIDUAL 1. The defendant knew that INDIVIDUAL 1's criminal charges, likely impending incarceration, lack of income, and poor credit score rendered him ineligible to receive a $300,000 loan under Primis' credit standards.

12. INDIVIDUAL 1 was convicted and sentenced to a term of imprisonment, which he began serving in or about December 2011. While INDIVIDUAL 1 was incarcerated, the defendant took out more loans in INDIVIDUAL 1's name, with a total principal value of approximately $530,400. The defendant used fake documents to secure these additional loans and the defendant forged INDIVIDUAL 1's signature on the loan documents. INDIVIDUAL 1 was unaware of these loans.

13. STEVENS soon expanded his fraudulent loan scheme beyond issuing loans in the name of INDIVIDUAL 1, and began issuing loans in the names of other individuals. Some of the individuals to whom STEVENS issued fraudulent loans had knowledge of STEVENS' scheme, and others did not. STEVENS offered witting participants in his scheme a small payment in exchange for their assistance.

14. One such instance of STEVENS' use of a witting (or at least not unwitting) loan recipient involved STEVENS' issuance of a fraudulent loan to another Primis customer (hereafter INDIVIDUAL 2). On or about May 19, 2011, STEVENS issued this loan to INDIVIDUAL 2 in the amount of approximately $80,000. The defendant directed the use of the proceeds from this loan to INDIVIDUAL 2 to pay off two prior fraudulent loans the defendant issued to INDIVIDUAL 2 (on behalf of Primis) that totaled approximately $70,150, at least some of which was used to pay off earlier loans made to INDIVIDUAL 1.

15. In addition, the defendant used INDIVIDUAL 2's personal savings account at Primis to further his scheme for several years. The defendant directed that the proceeds of several of the fraudulent loans he issued be deposited into INDIVIDUAL 2's personal savings account. The defendant, as a Primis employee, had access to INDIVIDUAL 2's account, and the defendant utilized that access to withdraw loan proceeds from INDIVIDUAL 2's account in order to further his scheme by, among other things, making payments on fraudulent loans, making cash withdrawals, and directing payments to other individuals.

16. The defendant remitted a portion of the fraud proceeds to INDIVIDUAL 2. For example, INDIVIDUAL 2's personal savings account at Primis received a $20,000 deposit on or about April 12, 2017. The funds originated from a fraudulent loan that the defendant issued on behalf of Primis in February 2017. On or about April 14, 2017, INDIVIDUAL 2 withdrew approximately $9,500 of the original $20,000 deposit for INDIVIDUAL 2's personal benefit.

17. STEVENS also used other individuals who were not complicit in STEVENS' scheme to further STEVENS' illicit activity. For example, the defendant used the personal identifying information ("PII") of an unwitting Primis customer (M.T.) to issue fraudulent loans on behalf of Primis to M.T. M.T. was unaware that the defendant had used M.T.'s identity to

obtain the loans, and M.T. had no means by which to make payments on the loans. In total, the defendant issued approximately $950,000 in fraudulent loans with M.T. listed as the (purported) borrower. This included a loan issued on or about June 16, 2017, in the amount of approximately $450,000. To open the $450,000 loan, the defendant created fraudulent documentation, including false responses on a loan application. The defendant also used a scanned image of M.T.'s state-issued Driver's License—which included M.T.'s full name, date of birth, home address, and Driver's License number—to support the fraudulent loan application. The defendant possessed and used M.T.'s Driver's License in furtherance of his scheme, which contained an "authentication feature" as that term is defined at § 2B1.1(b)(11) of the United States Sentencing Guidelines.

18. In addition, STEVENS issued approximately $600,000 worth of fraudulent loans on behalf of Primis to another Primis customer, J.W., with whom the defendant had a personal relationship. J.W. did not request, authorize, or know about these loans from Primis. The defendant possessed and utilized used J.W.'s personal identifying information, including J.W.'s Social Security number, driver's license number, birth date, and home address, to support the false documents supporting the fraudulent loans.

19. The defendant further exploited his relationship with J.W. by repeatedly accessing J.W.'s legitimate personal savings and checking accounts at Primis and withdrawing funds from J.W.'s accounts for STEVENS' own purposes. The defendant executed these misappropriations from J.W.'s account beginning in or about February 2018; by the time Primis uncovered the defendant's scheme to defraud, the defendant had withdrawn approximately $97,632 from J.W.'s accounts. The defendant concealed these withdrawals from J.W. by changing the mailing address on J.W.'s accounts so that J.W. would no longer receive monthly statements that reflected (and exposed) the defendant's unauthorized withdrawals.

20. Primis uncovered the defendant's fraudulent scheme in or about June 2023 after the defendant was hospitalized and was no longer able to maintain payments on his numerous outstanding fraudulent loans. At that time, the defendant's loan scheme actively consisted of six fraudulent outstanding loans, with a total balance of $2,199,131 (excluding interest payments). Primis suffered a loss of these total outstanding balances. Primis was also required to reimburse its customer J.W. for the $97,632 in unauthorized withdrawals that STEVENS made from J.W.'s accounts.

21. The chart below (**Table 1**) details the individual sources of the financial loss that Primis incurred due to the defendant's scheme to defraud, excluding interest payments.[1]

| Table 1 | | |
|---|---|---|
| **Individual Borrower or Account Holder** | **Account Description** | **Principal Loss Incurred by Primis** |
| INDIVIDUAL 1 | Fraudulent loan | $289,163.53 |
| INDIVIDUAL 1 | Fraudulent loan | $164,879.23 |
| J.W. | Fraudulent loan | $398,859.07 |
| J.W. | Fraudulent loan | $199,933.32 |
| M.T. | Fraudulent loan | $646,819.67 |
| M.T. | Fraudulent loan | $499,476.23 |
| J.W. | Unauthorized withdrawals (savings) | $73,003.16 |
| J.W. | Unauthorized withdrawals (checking) | $24,628.88 |
| | TOTAL | $2,296,763.09 |

(All in violation of Title 18, United States Code, Section 1344.)

---

[1] Primis' interest payments on these fraudulent loans amounted to $176,290.34; Primis also reimbursed J.W. a total of $4,589.55 in interest payments on the sums that STEVENS withdrew from J.W.'s accounts.

## FORFEITURE ALLEGATION

Pursuant to Federal Rule of Criminal Procedure 32.2, the defendant is hereby notified that upon conviction of the offense alleged in Count One, the defendant shall forfeit to the United States any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such violation. If property subject to forfeiture cannot be located, the United States will seek an order forfeiting substitute assets.

(In accordance with Title 18, United States Code, Section 982(a)(2), and Title 21, United States Code, Section 853(p)).

Jessica D. Aber
United States Attorney

By: _____
Thomas A. Garnett
Virginia Bar No. 86054
Robert S. Day
Virginia Bar No. 90663
Assistant United States Attorneys
United States Attorney's Office
919 E. Main Street, Suite 1900
Richmond, Virginia 23219-2447
Phone: (804) 819-5400
Fax: (804) 819-7417